## Lane, et al. v. Gess' Administrator, et al.

(Decided March 6, 1928.)

### Appeal from Fayette Circuit Court.

1. Wills.—Generally, a testator is presumed to have devised only his own property, or property over which he had power of disposition.

2. Wills.—If language used in will is not capable of more than one construction, general rule that testator is presumed to devise only his own property, or property over which he has power of disposition, is inapplicable.

3. Wills.—Where husband and wife each owned one-half undivided interest in a farm, husband, in will stating he wanted his wife to have the farm and all that was on it in fee simple as long as she lived, and at her death wanted it then to be divided, thereby intended entire farm to go to wife during life; devise of entire farm becoming valid when wife accepted and took under the will.

4. Wills.—Where husband and wife were vested each with title to one-half undivided interest in a farm, and husband, by will giving farm to wife and all on it in fee simple for life, and at her death it be divided equally between the two families, left the entire farm to wife, since the wife accepted under the will, at her death prop-

erty passed under will of testator, one half to her family and other half to his family.

WALLACE MUIR and W. W. MEEKS for appellants.

WILSON & HARBISON for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

In 1878 John Webb, the father of Mary C. Gess, who was the wife of Isaac S. Gess, conveyed to Isaac S. Gess and his wife, Mary C. Gess, jointly a tract of land in Fayette county. Thereby each of them was vested with the title to a one-half undivided interest in the farm.

Isaac S. Gess died in 1907, leaving a will, the construction of which is involved in this litigation. The first paragraph in the will is involved. It is as follows:

> "I, Isaac S. Guess county of Fayette state of Kentucky being of sound and disposing mind, do make this my last will. I wish all of my just debts paid. My wife knows them all. I want my dear wife to have the farm, and all that is on it in fee simple as long as she lives. At her death I wish it then to be divided equally between the two families, share and share alike."

The appellees are the family of Mrs. Gess, and the appellants are the family of Isaac S. Gess. It is conceded that the property that passed under the will of Isaac S. Gess must be divided equally between the two families and there is no controversy about the division between or among the members of the different families. It is contended by the appellees that nothing passed under the will of Isaac S. Gess, except his one-half undivided interest in the farm, and that Mrs. Gess took a life estate in the one-half and at her death the one-half interest of her husband should be divided between the two families; that is, one-fourth of the whole farm should go to Mrs. Gess' family under the terms of the will and one-fourth should go to the testator's family. Upon the death of Mrs. Gess, which occurred in 1924, leaving no will, her undivided one-half in the farm, so it is contended by appellees, passed to appellees under the laws of descent and distribution. If that be correct, appellees took one-half of the farm under the laws of descent and distribution,

and one-half of the other one-half under the will of Isaac S. Guess, which left one-fourth of the whole farm to appellants. The learned chancellor below so held, and we are called on to determine whether the construction placed by him on the will is more reasonably tenable than the construction contended for by appellants based on the language used by testator.

If it was the intention of Isaac S. Gess to leave to his wife the entire farm during her life, and that at her death the entire farm should be divided between the two families equally, and if his wife accepted the provisions of the will, and took the property in accordance with the will of the testator, the property all passed under the will of Isaac S. Gess, although he owned only a one-half interest in the farm. If the husband devised property to his wife which he did not own, and which in fact was owned by his wife, the devise is valid, if the wife accepted the provisions of the will and took under the will. This question was fully discussed in the case of Cavin v. Little, 213 Ky. 482, 281 S. W. 480. It was there held that, if the property was devised by one who did not own it to another, who accepted benefits under the will, such other person, and those claiming under him, were bound by the provisions of the will. It was so held in the case of South v. Mothershead, 173 Ky. 495, 191 S. W. 277. There are other cases to the same effect.

On the other hand, it is argued by counsel for appellees that it is a well-established rule of construction that extrinsic facts and circumstances may be considered in ascertaining what the testator meant by his will if the provisions are ambiguous. It is argued by them that there is an ambiguity in the clause of the will copied above, in that the testator used the word "it" in reference to what should be divided between the families, and that the word referred, as its antecedent, to his one-half undivided interest in the farm, and not to the farm as a whole. Section 465, Page on Wills, is relied on by appellees. It is there said:

"Testator will be presumed to know the limits imposed by law upon his testamentary power, and to strive to comply with those limits."

Further in the same section it is said:

"Where a will may be so construed as to operate upon the property belonging to testator, as well as to operate upon the property which did not belong to him, and over which he had no control, the will will be so construed as to apply to testator's property only."

We believe it is true that it is the general rule that a testator is presumed to devise only his own property, or property over which he has power of disposition. But in all such cases the question is whether the provisions of the will are ambiguous. If the language used in the will is not capable of more than one construction, the general rule mentioned cannot be made to apply.

After all, the sole question before us is to determine what the testator meant by the quoted provision of his will. The learned chancellor below reached the conclusion that the word "it," used in referring to the property which should be divided, had reference only to the interest which testator owned in the farm; but, leaving out of consideration everything except the language of the will itself, we find the court unable to agree with the chancellor. The thing which testator had referred to was "the farm and all that is on it." In the next sentence he stated in his will that at the death of his wife he wanted "it" divided equally between the two families. He could not have referred by the use of the pronoun to anything other than what he had mentioned in the preceding sentence, and that was the farm and all that is on it. Having this view of the case, we have reached the conclusion that the testator left the farm and all that was on it to his wife during her life, and at her death he directed that the farm and all that was on it should be divided equally between the two families. His wife accepted the provisions of the will, and at her death the property passed under the will of the testator, and one half thereof went to her family and the other half went to his family.

Judgment is reversed and cause remanded for proceedings consistent with this opinion.