# Ford et al. v. Yost et al.

Nov. 17, 1944.

As Extended on Denial of Rehearing
March 2, 1945.

V. R. Bentley for appellants.

O. T. Hinton for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

This suit seeks to have declared void Item 3 of the will of John W. Ford, Sr., as being in violation of the statute and rule against perpetuities and asks for an accounting. The testator died March 24, 1924, and his son, John Ford, Jr., died intestate March 4, 1936. The suit was filed by Ann Ford, the widow of John Ford, Jr., in her own right and as guardian of their five children, and by Howard Ford, an adult child of a former marriage, against the trustee under the will, two children and a grandchild, the daughter of a deceased child of John Ford, Jr., by his first marriage.

The will is a long one and disposes of a varied and large estate. Item 1 devised certain property to the testator's daughter. Item 2 devised certain property to the children of a deceased son, Charley Ford, subject to some limitations and a trust. Item 3 devised to his son, John Ford, Jr., (1) a life estate in the surface of

certain land, the minerals being reserved, and the surface of testator's home farm, subject to the life estate of his widow; (2) to "W. W. Gray, Cashier of the First National Bank of Pikeville, Kentucky, and his successors in office, as trustee, for the use and benefit and in trust for my beloved son, John Ford, Jr., and his children the following described property, to-wit." We omit the description and the powers and directions to the trustee with respect to the management of the estate as well as a spendthrift provision as irrelevant.

Then follows the following provision:

"It is my will that this trust continue for a period of 30 years from the date of probate of this will, at which said time I direct said Trustee to make a complete settlement of all of his accounts, as Trustee for my son, John Ford, Jr., and his children and to turn said property over to my son, John Ford, Jr., for life with remainder in fee simple to his children, making possessions (sic) for the support of my son's children at said time."

The trustee was directed to pay the income to John Ford, Jr., for the support and maintenance of himself and his children. The will declared that John Ford, Jr., should not sell, convey, or encumber his life estate and it should not be liable for his debts. Item 4 of the will devised $1,000 outright to John Ford, Jr., and Items 5 and 6 made provision for the testator's widow, who died in 1927.

The statute, KRS 381.220, is as follows:

"The absolute power of alienation shall not be suspended, by any limitation or condition whatever, for a longer period than during the continuance of a life or lives in being at the creation of the estate, and twenty-one years and ten months thereafter."

Its predecessor having the same meaning was Section 2360, Kentucky Statutes, which was part of the chapter dealing exclusively with real estate. It is applicable to private trusts (Sandford's Adm'r v. Sandford, 230 Ky. 429, 20 S. W. 2d 83), and the common law rule against perpetuities embraces personal property. Moore's Trustees v. Howe's Heirs, 20 Ky. 199, 4 T.B. Mon. 199; Saffold v. Wright, 228 Ky. 594, 599, 15 S. W. 2d 456. The test of invalidity is that of possibility, the question

of probability not entering into the equation. Chenoweth v. Bullitt, 224 Ky. 698, 6 S. W. 2d 1061. If by any possibility the ultimate vesting of the estate may be postponed beyond the stipulated period, the limitation is void. Saulsberry v. Saulsberry, 140 Ky. 608, 131 S. W. 491; Fidelity & Columbia Trust Co. v. Tiffany, 202 Ky. 618, 260 S. W. 357. Technical alienability or the power of a trustee to sell and convey the particular property for investment is not enough to escape the statute, for the proceeds wear the same fetters of restraint. 41 Am. Jur., Perpetuities and Restraints on Alienation, Secs. 21, 85. The invalidity of the final postponement of the gift of the corpus carries with it the invalidity of the trust as a consequence.

Here there is no possibility of the estate vesting or being alienated within the period. There could be no vesting or alienation of the corpus for 30 years from the date of the probate of the will, which was March 24, 1924. There could be no settlement of the trust estate until March 24, 1954, for the term is definitely placed as "30 years from the date of the probate of this will." It is important to note that during the period the son, John, and his children are entitled to receive only the income of the estate. At the end of the period, but not before, his life estate and their remainder is fixed. Who those remaindermen will be cannot be known. There may have been afterborn children. John Ford, Jr., the life tenant, died March 4, 1936. Suppose that he and all his children, the beneficiaries, had died within eight years of the date of the probate of the will. This trust would, nevertheless, have continued for 22 years afterward. Therefore, the limitation upon the vesting of the estate and the termination of the trust is void. Fidelity Trust Company v. Lloyd, 78 S. W. 896, 25 Ky. Law Rep. 1827; Stevens v. Stevens, Ky., 54 S. W. 835; Coleman v. Coleman, 65 S. W. 832, 23 Ky. Law Rep. 1476; Saulsberry v. Saulsberry, supra; Tyler v. Fidelity & Columbia Trust Co., 158 Ky. 280, 164 S. W. 939; Perry v. Metcalf, 216 Ky. 755, 288 S. W. 694; Saffold v. Wright, supra; Fox v. Burgher, 285 Ky. 470, 148 S. W. 2d 342.

We may note two foreign cases. A similar trust was considered in Johnson v. Preston, 226 Ill. 447, 80 N. E. 1001, 1003, 10 L. R. A., N. S., 564. The testator devised a farm to be held in trust for the use and benefit of two grandchildren for 25 years "from and after the date of the probate of this will," with no power of sale

or conveyance or alienation during that period except the beneficiaries could convey one to the other. At the death of the beneficiaries the land went to them or their heirs absolutely. A like devise of other property was made to two other grandchildren. The provisions as to the management of the trust are almost the same as those in the instant will. The will was probated within a month of the death of the testatrix. The court held the limitation void. It reasoned that while the vesting of the estate in the executor "would, in the ordinary and usual course of events, probably occur within a few months, or at most a few years, after the death of the testatrix, yet it cannot be said that it is a condition that must inevitably happen within twenty-one years from the death of the testatrix. Since a bare possibility that the condition upon which the estate is to vest may not happen within the prescribed limits is all that is necessary to bring the devise in conflict with the rule, we see no escape from the conclusion that the devise to the executor offends the rule against perpetuities, and is therefore void." It was further held that though the provisions for the trust were invalid, nevertheless the remainder interest was not defeated.

In Re Estate of Friday, 313 Pa. 328, 170 A. 123, 124, 91 A. L. R. 766, there was a devise in trust with the property to be held intact, subject to the power of the trustee to reinvest, for a term of 30 years, "but not longer, however, then (sic) until the death of all my children and grandchildren living at the date of my death." The court held that, even though the interests of the beneficiaries be regarded as contingent, except for this alternative provision, the vesting of the estate could not by any possibility be postponed beyond the designated lives in being at the death of the testator and would have been void, but that provision made the devise valid.

The appellees contend that the question is moot because the estate has been administered; also that the appellants are estopped to deny the validity of the trust since they have recognized it to be valid by previously seeking the construction of it and accepting the benefits under orders of court.

These contentions rest in part upon a suit prosecuted several years ago and another filed in 1938 which was consolidated with this one, filed in 1942. The contention that the point is moot, i. e., only a supposed case, is with-

out foundation for there has not been a final or binding disposition or settlement of the estate or the trust.

In Ford v. Ford, 230 Ky. 56, 18 S. W. 2d 859, Polly Ford, the first wife of John Ford, Jr., sought to have her claim for alimony and maintenance of her children, appellees herein, satisfied out of the trust. The validity of the trust was in no way questioned, the parties and the courts treating it as valid. Moreover, only the income was dealt with except that we ruled that none of the property devised to John Ford, Jr., could be sold under execution since he did not have legal title to it. The income was subject in any event to be used for the maintenance and benefit of the children. The appellants, Ann Ford and her children, were not parties to that suit, and whatever might be said as to the finality of such treatment of the trust, they are not bound by the judgment.

It would appear that since then the trust has been administered by the trustee under direction or orders of the court. From time to time the allowances for the children of both wives were changed.

The other suit, that consolidated with this, was filed by the appellant, Ann Ford. In it she sought to have the trustee declared to have the right to use the corpus for the benefit of the children. But the judgment merely increased the allowances from the income. That case also involved both the estate of John Ford, Jr., the life tenant of the trust, and the estate of his mother. If, as the appellees contend, the settlement of the trustee shows the payment of a relatively small sum in excess of the income in paying the allowances, taxes, etc., we are not concerned with that or the accounting at this time. The question is whether those acts or the position taken by the appellants estopped them to deny the validity of the trust under the statute and rule against perpetuities.

The power of a person to direct to whom or in what manner his estate shall pass after his death is not a natural one. It depends upon the positive permission of society. As stated in Moore's Trustees v. Howe's Heirs, 20 Ky. 199, 4 T. B. Mon. 199:

"To stimulate industry and economy, and to enable parents to exert a beneficial influence over their children and make such arrangements as may suit the exigencies of their families, the law of this country as well as that

of most other civilized nations, has given to every one of competent capacity, the power of directing by will to whom his estate shall pass. But although it is reasonable that a man should have power of thus disposing of his estate after his death, it is obviously as reasonable that he should not have the power of directing its disposition for all time to come; and the law, while, for beneficial purposes, it concedes to every one the power of directing to whom his estate after his death shall go, has at the same time been careful that this power should not be abused. To prevent, therefore, estates from being locked up forever from commercial and social purposes, it has forbidden perpetuities, and fixed a period beyond which no one is allowed to direct how his estate shall devolve."

Therefore, the rule against perpetuities and restraints on alienation of property is one of high public policy. Society is concerned more than are the individual parties. And though the general principles of estoppel appear to govern the right of interested persons to raise the question of the validity of a devise or grant (41 Am. Jur., Perpetuities and Restraints on Alienation, Sec. 65; 48 C. J. 1036), that doctrine ought to be strictly recognized and applied because of the concern and solicitude of public policy.

We look to the application of the law to the particular facts of the case. The estoppel claimed is a branch of the rule against assuming inconsistent positions, as where one has accepted and retained the fruits of a void contract and later undertakes to repudiate his action and take advantage of the invalidity.

As a general rule of the doctrine, one cannot be estopped by reason of accepting that which he is legally entitled to receive in any event; hence, as stated in 19 Am. Jur., Estoppel, Sec. 65, "estoppel against attacking or disputing a contract or transaction is not ordinarily created by the acceptance of a benefit purporting to be derived therefrom if in fact the party is entitled thereto regardless of whether the contract or transaction is sustained or overthrown."

In this state the doctrine of estoppel by acquiescence or by the acceptance of benefits under a will has not been freely applied. Barrett's Executor v. Barrett, 166 Ky. 411, 418, 179 S. W. 396, L. R. A. 1916D, 493. The argument of estoppel is really that of the principle of election. But where a provision in a will is void, there is

no basis for an election, and, although the conduct of a party would otherwise constitute an election, it does not operate as a renunciation of his other rights. Page on Wills, Secs. 1347, 1381. And even where a provision of a will is valid, if it gives to a beneficiary only what he would have had without a will, election is not necessary. Page on Wills, Sec. 1347; Hubbard v. Beverly, 197 S. C. 476, 15 S. E. 2d 740, 135 A. L. R. 1206. This rule was recognized in York v. Adams, 277 Ky. 577, 126 S. W. 2d 1077, holding that a widow was not estopped to deny title to a tract of land under a deed notwithstanding she had accepted the benefits of her husband's will which purported to devise to her a life estate in land which she already owned. This was because the devise was a lesser estate than that which she already had, and the will did not attempt to divest her of any title she had as a qualification or condition.

In this case the widow and children of John Ford, Jr., received what they would have received in any event, i. e., only income, and never came into title or possession of any of the corpus of the estate. A similar question was raised in Re Walkerly's Estate, 108 Cal. 627, 41 P. 772, 779, 49 Am. St. Rep. 97, where the testator devised certain property to trustees with the provision that no final sale or distribution of the trust estate should take place during the life of testator's wife, but only after expiration of 25 years after his death. This, it will be noted, is quite like the instant case. After some years, the provision was held void under the rule of perpetuities and restraints upon alienation of property. Estoppel was raised against the widow and children who had been receiving only a family allowance. The court said:

"The fact that under these circumstances the widow had elected to take under the will would have estopped her from denying the validity of the instrument as a will, but did not and could not operate to estop her from insisting upon a due interpretation of the instrument."

The text in 41 Am. Jur., Perpetuities and Restraints on Alienation, Sec. 65 is based upon this case. See also 48 C. J. 1036.

The foregoing discussion and the conclusions implied have been necessary because the widow and one of the appellants have been sui juris for sometime. The others are infants, which is an added reason for holding

them not barred from raising the question of invalidity of the trust. A person cannot be estopped in pais when he cannot bind himself by contract, especially where the element of misrepresentation is absent. 19 Am. Jur., Estoppel, Secs. 45, 174. That law is more emphatic when the estoppel rests on mere acquiescence. Thus, in Bowling v. Bank of New Haven, 219 Ky. 731, 294 S. W. 499, we held that remaindermen who were infants when their property was sold and the proceeds re-invested in other land, with a vendor's lien on it, could not give their consent to the improper investment or burden upon the trust estate, and that their acquiesence after they became of legal age did not operate as a ratification so as to estop them from questioning the validity of the lien on the property.

We are of opinion that the provisions of the trust offend the rule and the statute against perpetuities and restraints on alienation of property and are, therefore, void. We are of the further opinion that the appellants are not estopped and have the right to raise the question. This is as far as it is necessary to go, and we express no opinion as to the consequences or rights and liabilities of the respective parties concerned.

Judgment reversed.

Whole Court sitting.